IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NEIL JACKSON

    Plaintiff,

v.                    Case No.: 7:22-cv-00090

D. DAMERON, et. al.

    Defendants

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

DEC 01 2023

LAURA A. AUSTIN, CLERK
BY: D. Beeson
DEPUTY CLERK

MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT

    Plaintiff Daniel Neil Jackson, pursuant to Rules 15(d), Fed. R. Civ. P., requests leave to file a Supplemental Complaint, clarifying some of the initial claims and expanding upon those claims to take into account further violations.

I. FACTS

1. In February of 2021 the Plaintiff was transferred from River North Correctional Center to Augusta Correctional Center. At the time of the Plaintiff's transfer, he was being treated for a number of injuries to his right leg, which were resulting in pain and nerve damage. As part of this treatment the Plaintiff was prescribed a support sleeve for his ankle, medications for the treatment of pain, a medically assigned bottom bunk, and scheduled visits with a Neurologist.

Upon arrival at Augusta, the prescribed ankle support was confiscated by property pending reissue by medical. On three separate occassions the Plaintiff met with Dr. Smith and requested to be reissued the support sleeve. On each occassion Dr. Smith told the Plaintiff that he would 'look into' getting the support sleeve reissued, indicating that he understood the reason it had been prescribed and its necessity, but never reissued the item.

Not having the support limited the Plaintiff's mobility and restricted his ability to engage in physical exercises, which resulted in further detioriation to the muscles in the leg, and by proxy, the health of the leg.

2. In May of 2021 the Plaintiff was employed by the Apparel Plant at Augusta. Employee dress code required the Plaintiff to wear state boots during work hours, unless issued medical clearance to wear tennis shoes – known as a 'Tennis Shoe Pass.' The hard-soled state boots increased the pain and loss of feeling in the injured leg, which increased throughout the day and severely hampered the Plaintiff's ability to work. Therefore, the Plaintiff requested to be issued a 'Tennis Shoe Pass.'

Dr. Smith refused to even consider the request, and told the Plaintiff that he would either have to suffer the pain and discomfort — and possibly risk further damage — or quit. Dr. Smith also stated that he did not care if others had 'Tennis Shoe Passes', I would not get one from him.

Because of the pain and the fact that the boots were resulting in further damage, the Plaintiff was forced to resign for Medical reasons.

In June of 2021 the Neurologist prescribed the wearing of soft-soled shoes, along with insoles for further support and cushioning, substantiating the Plaintiff's initial request for a 'Tennis Shoe Pass'. The Plaintiff was not given another job for a period of six months due to the resignation, though he applied for multiple positions.

3. In June of 2021 the Plaintiff attended an appointment with the Neurologist at MCV. Though diagnosing a bone spur in the heel (causing partial tearing to the Achilles), a cyst in the knee (from ACL/MCL damage), muscle atrophy, and Nerve Damage, the Neurologist indicated there was no _immediate_ need for surgery, but that the plaintiff should continue being treated for pain and begin

Physical Therapy to prevent further decline. Upon returning to Augusta, Dr. Smith met with the Plaintiff confirming he was aware of the prescribed treatments. In the months (and now years) to follow, the Plaintiff was never given any physical therapy. The Plaintiff sent Dr. Smith and Head Nurse D. Dameron multiple requests regarding the physical therapy, but never received any response.

4. In October of 2021 the Plaintiff requested renewal of his expired medications for treatment of pain. He was informed of the fact that his medications would not be renewed and if he needed treatment for pain he could 'buy over-the-counter meds from commissary'. The Plaintiff sent multiple requests to medical regarding his ongoing pain and was given similar responses or was ignored.

On one occassion, after explaining to Head Nurse Dameron that he could not afford to purchase OTC meds from commissary every week, and was limited to far less than what he had been taking to treat pain by purchase limits with commissary. Nurse Dameron told the Plaintiff to 'just do what everyone else does and go buy suboxone off the yard,' indicating the

Plaintiff should pursue illegal means for the treatment of pain.

5. From the date of his removal from prescribed medications (            ), until August of 2023 the Plaintiff was forced to suffer almost constant pain and discomfort. This resulted in further damage to the injured leg (due to diminished capacity for mobility), loss of sleep, diminished mental health (stress, depression, and anxiety), and unnecessary financial burdens in the Plaintiff's attempts to 'self-medicate'.

Upon information and belief, further attempts by the Plaintiff were outright ignored due to the Plaintiff's pursuit of the 1983 Complaint.

6. In August of 2023 the medical department at Augusta began a contract with a new provider and had another doctor coming in to treat inmates. At that time, the Plaintiff was immediately reissued his ankle support sleeve, new insoles, and medication for the treatment of pain. This was based off of previous records, and the provider indicated at the time that the Plaintiff should have been receiving the treatments all along.

7. On October 11, 2023 a note was placed in my medical record stating that a medical

bottom bunk status was not indicated, though I had documentation showing it had been renewed for a period of 365 days on June 6, 2023. This change had occurred without any examination or evaluation of the Plaintiff.

The Plaintiff then sent in a request regarding this and on 11-14-23 met with Dr. Gamez. The Doctor stated that he had no recollection of ordering the status to be removed from the Plaintiff and that based on the injuries to the Plaintiff's leg he should be on medical bottom bunk status. He indicated that removals of such status had been done at the urging of Nurse Dameron, but that I did require bottom bunk and should not have been removed. Upon information and belief the Defendant, D. Dameron, removed me from my bottom bunk status of her own accord as retaliation for the 1983 Civil Suit.

8. On 10-12-23 the Defendant's, D. Dameron's, husband Lt. Lokey (Institutional Investigator) ordered a Urinalysis be conducted on the Plaintiff. This occurred, even though the Plaintiff has no history of opioid usage and was not displaying any signs of usage. The only connection the Plaintiff had to

Opioids was Nurse Dameron's statement that the Plaintiff should use them to treat pain, which is a significant claim in the 1983 Civil Suit.

Lt. Lokey indicated that the Plaintiff was positive for the substance his wife had 'prescribed' to him, and then proceeded to make claims that the Plaintiff had admitted to regular usage and fabricated the answers to a questionaire he claims to have given to the Plaintiff.

Though Lt. Lokey had no documentation proving the legitimacy of his statements, procedures were not properly followed for the urinalysis investigation, due process was violated, and Lokey did not have <u>any</u> statement signed by the Plaintiff, The Plaintiff was nonetheless found guilty. This resulted in a $25.00 fine, loss of visits for two years, and loss of phone for two years.

### III. LEGAL CLAIMS

9. Plaintiff realleges and incorporates by reference paragraphs 1-7 indicating a deliberate indifference to medical needs by Dr. K. Smith and RN Derinda Dameron (nee Lokey), which violated the Plaintiff's, Daniel Neil Jackson's rights and constituted cruel and

unusual punishment under the Eighth Amendment to the United States Constitution.

10. Plaintiff realleges and incorporates by reference paragraphs 7 and 8 indicating a Campaign of Retaliation initiated by the Defendant Decinda Dameron, the actions of which would be enough to make many people drop their claims.

IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgement granting Plaintiff:

11. Compensatory Damages in the amount of $1,840.00 for expenses on pain relievers against each defendant.

12. Compensatory Damages in the amount of $500.00 for wages lost as a result of Plaintiff's medical resignation, and subsequent time spent without a job, against Dr. K. Smith.

13. Punitive Damages for pain and suffering — both physical and emotional — in the amount of $65,000.00 (approx. $100.00 per day for each day of suffering) jointly against the Defendants.

14. Plaintiff's costs in this suit.

15. Any additional relief the court deems just, proper, and equitable

Respectfully Submitted,

11-24-23

Daniel Neil Jackson

Plaintiff

Augusta Correctional Center

Daniel Jackson #1182398
Augusta Corr. Center



United States District Court
Office of the Clerk
210 Franklin Rd., RM 540
Roanoke, VA 24011

2401182208 C001