IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NEIL JACKSON,

   Plaintiff,

v.    Case No: 7:22-cv-00090

D. DAMERON, et al

   Defendants

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED
JUL 18 2024
LAURA A. AUSTIN, CLERK
BY: A. Beeson
DEPUTY CLERK

PLAINTIFF DANIEL NEIL JACKSON'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

COME NOW, DANIEL NEIL JACKSON, PLAINTIFF, proceeding Pro Se in response to the defendants Motion for Summary Judgement.

Let me begin by saying that it was never my intent to add claims, put more "meat on the bones", or increase the "badness" of the claims — or, even more importantly, it was not my intent to show inconsistencies in my factual claims. I am a complete novice to the courts. I am not sure about what I am doing, much less if I am doing something right ... Or wrong. I have only tried to express how the suffering has affected me and to build my case.

I have thus far only tried to explain the events which led to my claims. Facts, such as Nurse Dameron being in the titled position as Head

Nurse at Augusta, and thus responsible for making appointments and ordering prescriptions, etc., was exclude as a fact because I was under the impression that this was understood as a matter of fact. Thus, when confronted with the question of why she is included in this case, I mentioned this. Not as a "new fact", but rather as what I believed were already evident.

FURTHERMORE, I was instructed by a layman, who told me to only describe the basic claims, without extensive detail or case law. I did this. If events or facts were misplaced or misremembered or excluded, it was due to my lack of legal knowledge and experience. For this reason, I requested the assistance of a court-appointed attorney, to help me 'clean up' my mistakes.

Regardless of the minor inconsistencies the facts remain which support moving forward with the Plaintiff's claims and denying the Defendant's motion for a Summary Judgement.

1. The Plaintiff arrived at ACC, transferring in from RNCC, on 2-10-21. Dr. Smith first saw the Plaintiff on 2-18-21 "and ensured that his medication orders were up to date. He then placed a request for Plaintiff to be seen by a neurosurgeon,". Yet, the

right ankle brace ordered and issued to me at RNCC by my previous physician was not returned. While the medical records note that I requested its return as well, it was not returned and Dr. Smith makes no note as to why he refused to return a prosthetic device that was helping my pain and distress. Furthermore, Dr. Smith alludes to the neurosurgeon's reports as a part of the basis for his decision, yet I did not see the neurosurgeon until nearly three months later.

To deny prescribed treatment without justification is a clear violation.

2. Dr. Smith states that he ordered the appointments with the neurosurgeon, yet according to the medical records, these appointments were already made while the Plaintiff was housed at RNCC. Dr. Smith took no personal initiative and appears to have done the minimum.

3. Dr. Smith contradicts his own orders. According to the records he approved my bottom bunk status, for which there are much stiffer requirements. Yet he refused to issue the ankle brace I had requested for support. If there was truly no need for

the right ankle brace then there would be no need for a medical bottom bunk.

4. Dr. Smith claims to have denied the Plaintiff's request for a medical exemption from work boots, or 'tennis shoe pass' based upon the diagnosis of the neurosurgeon and that there was no medical reason he could not wear boots. The Plaintiff explained that the softer insoles put less pressure on the affected areas and caused less pain and distress.

Dr. Smith's claim was that he would <u>not</u> issue anyone a tennis shoe pass and that there was no such thing. Furthermore, he did <u>state</u> that I could continue wearing the boots and suffer or resign my position.

Because of the pain the hard-soled boots were causing my foot and the tingling in my heel I was forced to turn in my resignation.

His justifications for refusing my request hold no merit and are further refuted by the fact that on 7/12/21 an orthopedic specialist recommended arch supports and padded heels. This supports the Plaintiff's request for the "tennis-shoe pass" was sound and that Dr. Smith failed to respond reasonably. Fulfillment of the request

could have avoided unnecessary and wanton infliction of pain, as well as the Plaintiff's need to resign from his job.

5. While I may have misunderstood the specialists recommendation for "self-performing exercises", I was never given any instruction by either him nor Dr. Smith. When the Plaintiff saw Dr. Smith on 7/27/21 Dr. Smith only asked if the Specialist had gone over the treatment plan — which included the physical therapy. I was never shown any self-performing exercises or otherwise, only asked if I was told about the treatment plan.

6. Under section III, Undisputed Material Facts, #25. states that "Dr. Smith continued to see the Plaintiff until his departure in May 2023." This is false. Medical records clearly indicate the Dr. Smith saw the Plaintiff on 7/27/21 for the last time. Thus, all further medical decisions, including removal from prescribed medications, was done without any follow-up consultation. The bottom bunk renewal on 6/19/22 was done via request without any consultation.

7. The medical records are not complete, missing appointment notations which occurred between 9/10/21 and 11/3/23. In particular,

The Plaintiff was seen by Nurse Practitioner J. Shields in August of 2023, at which time she reissued my ankle brace, arch supports and renewed my bottom bunk status for a period of one year (365 days). Shortly thereafter, I was apparently removed from ~~my~~ bottom bunk status without any consultation. This occurred within weeks of the urinalysis conducted by the Defendant's husband, Lt. Lokey.

8. The Defense admits the Plaintiff was removed from his medications. While the discontinuation of his Cymbalta due to poor compliance is understandable, the fact that Ibruprofen is available for purchase through commissary does not justify removing a patient from a prescribed treatment and failing to provide pain medication (Ellis v. Butler, 890 F. 2d 100).

Chronic pain constitutes a "continuing violation" and is not barred by any statute of limitations as long as the medical need remains untreated. While the Specialists agreed there was no immediate need for surgery, they did note damage to the leg (Nerve compression, Bone spur in heel, and Baker Cyst in knee) and

prescribed pain treatment, including anti-inflammatory medication. Discontinuing my Ibuprofen without follow-up and while I am still continuing to complain about pain constitutes a clear violation.

9. Stating that Nurse Dameron was not involved in the discontinuation of medications nor were requests made to her for renewal is false. On being notified of the discontinuation I wrote several requests to get the medications renewed. These requests were most often responded to by Nurse Dameron, though a few were signed V. Hallse. According to requests, Dameron repeatedly noted I could purchase Ibuprofen off commissary and refused to schedule me for sick call, though I was complaining of pain. These requests are documented parts of the complaint process and clearly show I was repeatedly denied any treatment -' most often signed off on by Nurse Dameron.

10. I admit that the claim regarding statements made by Nurse Dameron is based upon a 'My word against hers.' I can offer no evidence beyond my own sworn affidavit.

11. In regards to the retaliation claims, much of it is conclusory, but I believe they are self-evident conclusions:

   a. Since service of the claims against the Defendants, the Plaintiff received seven institutional charges in a one year span and was placed into Segregation twice. This far exceeded the disciplinary actions against the Plaintiff over the previous 15 years. The Plaintiff can show evidence of the fact that many of these charges were baseless and that he was denied due process. Upon information and belief, this was directly related to the suit filed against Nurse Dameron.

   b. The Urinalysis was conducted by her husband, without any observation of procedure. I was charged with use of suboxone, which was clearly grounds of the claims against Nurse Dameron. This occurred around the same time that I was removed from my bottom bunk status without consultation.

   c. My bottom bunk status was renewed by J. Shields for 365 days in August of 2023. According to Dr. Gamez and other Nurses, this status was ordered to be reviewed by ▓▓▓▓ Nurse Dameron in October. This occurred during

and allowed me to deal with the constant pain. Since that time I have become dependent upon Suboxone and suffer severe withdrawal symptoms when attempting to come off the drug. My use has been of my own volition, but as an institutionalized individual I am ▓▓▓ under the care of VADOC and its representatives. I am not blaming Nurse Dameron for my addiction to Suboxone, I am blaming her irresponsible and reckless statement for leading me to believe that such use might help.

13. Addressing the Defendants request for show of an objective component - While the neurosurgeon and orthopedic specialist agreed that it was not severe enough at the time for surgery, they agreed that there was a _need_ for conservative treatment - specifically symptomatic treatment with anti-inflammatory medications (Ibruprofen). The Defense claims no serious medical need, yet such a need is described as " one that has been diagnosed by a physician as mandating treatment or one so obvious...." Yet, the defense contradicts itself by stating that the specialist agreed that all that was "needed was conservative treatment". Thus, they admit there was a prescribed _need_ and that

the same time period in which Nurse Dameron's husband was conducting his urinalysis.

12. As to my use of Suboxone, while I have admitted to struggling with substance abuse in the past, I have had no history of Opioid addiction. Furthermore, I have not had any history of substance use since being in Prison. I will not claim to have maintained sobriety, but I have rarely partook of substances in recent years. As of 2011 I became 'straight-edge' - A term used to denote someone who does not use any substances. I remained sober until 2020. At that time, I began to drink again - once or twice weekly - but did not use drugs. In 2022, after being removed from my pain medications, I began drinking more to "self-medicate". When Nurse Dameron made the statement that I should "go buy suboxone off the yard", I did not take this as a serious prescription, but the fact that she was a medical professional still lended some validity to her "suggestion". I did as she suggested. I discovered that the Suboxone did help with the pain and began using it daily. This helped me to stop drinking

they ultimately removed me from the medication that was prescribed as a part of that need, telling me to go buy it off commissary. Therefore, they have admitted to a prescribed need and to the fact that they denied that prescribed need when they removed me from my medications.

As an indigent status inmate, I cannot be expected to pay for my own medical care. It is medical's responsibility to provide such treatment according to the insurance plan I am covered by.

14. As to the Subjective component;

a) Dr. Smith did <u>not</u> provide assessments, order/authorize outside referrals, provide ongoing treatment, or close follow-up.

- Outside referrals had been previously ordered while the Plaintiff was at RNCC. Dr. Smith only followed what treatments had been previously **planned**.
- Dr. Smith denied request for the brace, which would have provided support for my achilles (which was being damaged by the bone spur). Not having this support limited the Plaintiff's ability to remain active.
- Dr. Smith denied request for 'tennis shoe pass'

which caused greater pain and limited mobility, affecting my ability to work and my mental health.

• Dr. Smith only provided medical attention <u>as required</u>, meaning he only did what was ordered or previously done by other doctors or specialists. He was not attentive to my needs, requests, or complaints, and upon each visit he seemed more concerned with getting rid of me as quickly as possible and doing as little as possible.

• To state that Dr. Smith made judgements in collaboration with outside specialists is a false characterization. No specialist was consulted when removing my ankle brace, which was previously prescribed by another doctor. No specialist was consulted when denying my "tennis shoe pass", and in fact, my request was proven sound when the specialist prescribed "arch supports" and "padded heels" — which could have partly been dealt with by prescribing the "tennis shoe pass" and allowing me to maintain my job.

b.) Nurse Dameron has a history of making snide and inappropriate comments, ignoring requests, and acting in a retaliatory manner towards

inmates she has previously had conflict with.
- Discontinuation was done by Nurse Dameron, or at least under her guidance. As head nurse, Dameron has to sign off on prescriptions and discontinuation of prescriptions. Requests I sent were addressed to Dameron and either ignored or returned denying me any treatment. These requests are a part of the Grievance Process which led to the 1983.
- Furthermore, her reckless and unprofessional statements were certainly direct interaction with the Plaintiff when considering the Discontinuation of his medications.
- Dameron was further made aware of my pain and sleep issues which were documented through mental health that was a direct result of my removal from pain medications. She chose not to make any active moves to rectify this issue, particularly after the 1983 was filed.

## Conclusion

While I admit to shortcomings in my arguments, this is due to a lack of legal knowledge and experience on my part, not to a lack of facts supporting the claims

against the defendants. Civil Rights violations are evident, even if the court only wished to accept the fact that I was left to suffer with Chronic Pain and was refused treatment when my medications were removed, there is nonetheless a continuing violation.

THEREFORE, Plaintiff Daniel Neil Jackson respectfully requests that the court denies the Defense's Motion for Summary Judgement and that all claims proceed accordingly in the interest of justice.

Respectfully submitted,
Daniel Neil Jackson

Daniel Jackson #1182398
WCC

United States District Court
Office of the Clerk
210 Franklin Rd, Room 540
Roanoke, VA

US POSTAGE
quadient
FIRST-CLASS MAIL
IMI
$000.97
07/15/2024 ZIP 23868
043M31242233

RECEIVED
JUL 18 2024
USDC Clerk's Office
Mail Room

OUTGOING
JUL 15 2024