CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
September 09, 2024
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DANIEL NEIL JACKSON, | ) |
| Plaintiff, | ) Civil Action No. 7:22-cv-00090 |
| v. | ) |
| D. DAMERON, RN, *et al.*, | ) By: C. Kailani Memmer |
| Defendants. | ) United States Magistrate Judge |

## MEMORANDUM OPINION

Plaintiff Daniel Neil Jackson, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against D. Dameron, RN ("Nurse Dameron"), and Kyle Smith, MD ("Dr. Smith"). Jackson claims that the defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. He also claims that Nurse Dameron retaliated against him for engaging in activity protected by the First Amendment.

The case is before me by the parties' consent under 28 U.S.C. § 636(c). *See* ECF No. 26. Presently before me is the defendants' partial motion to dismiss. ECF No. 41. The motion has been fully briefed and is ripe for review. *See* ECF Nos. 42, 50, 51. For the reasons set forth below, the partial motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

### I. BACKGROUND

Jackson is in the custody of the Virginia Department of Corrections ("VDOC"). He was previously incarcerated at Augusta Correctional Center ("Augusta"), and his claims stem from events that allegedly occurred there between February 2021 and November 2023. The following factual allegations are taken from the supplemental complaint filed on February 7, 2024, ECF No. 39.

Jackson was transferred to Augusta from another VDOC facility in February 2021. At the time of his transfer, Jackson was being treated for "pain and nerve damage" in his right leg. Supp'l Compl. 1, ECF No. 6. He had been prescribed "a support sleeve for his ankle, medications for the treatment of pain, [and] a medically assigned bottom bunk." *Id.* After he arrived at Augusta, "the prescribed ankle support was confiscated by property pending reissue by medical." *Id.* at 2. Jackson alleges that he met with Dr. Smith on several occasions and requested that a support sleeve be reissued for his ankle. *Id.* Although Dr. Smith told Jackson that he would "look into getting the support sleeve reissued," he "never reissued the item." *Id.* (internal quotation marks omitted).

In May 2021, Jackson was hired to work in the apparel shop at Augusta. *Id.* The employee dress code required that he wear boots to work unless he received a medical exemption. *Id.* Because the hard-soled boots issued by the VDOC increased the pain and numbness in his right leg, he asked Dr. Smith to issue a medical exemption known as a "tennis shoe pass," but Dr. Smith "refused to even consider the request." *Id.* at 3 (internal quotation marks omitted). Jackson ultimately resigned from the apparel shop because of the pain and discomfort that he experienced wearing the boots. *Id.*

Jackson subsequently saw a neurologist who "prescribed the wearing of soft-soled shoes, along with insoles for further support and cushioning." *Id.* Jackson alleges that the neurologist also recommended that he "begin physical therapy to prevent further decline." *Id.* at 3–4. Jackson claims that despite being aware of the treatment prescribed by the neurologist, neither Dr. Smith nor Nurse Dameron responded to his "multiple requests" to begin physical therapy. *Id.* at 4.

Jackson alleges that his prescription pain medications, including ibuprofen, were discontinued in October 2021 and that he was told that "if he needed treatment for pain he could 'buy over-the-counter meds from [the] commissary.'" *Id.* Jackson subsequently submitted

"multiple requests to medical regarding his ongoing pain and was given similar responses or was ignored." *Id.* On one occasion, Jackson specifically explained to Nurse Dameron that he could not afford to purchase over-the-counter medications from the commissary and that he was "limited to far less than what he had been taking to treat pain by [commissary] purchase limits." *Id.* Jackson alleges that Nurse Dameron "told [him] to 'just do what everyone else does and go buy suboxone off the yard.'" *Id.* at 4–5.

Jackson alleges that he endured "almost constant pain and discomfort" from the time his prescription medications were discontinued until August 2023, when the VDOC "began a contract with a new provider and had another doctor coming in to treat inmates." *Id.* at 5. At that point, Jackson was "immediately reissued his ankle support sleeve, new insoles, and medication for the treatment of pain." *Id.*

On October 11, 2023, "a note was placed in [Jackson's] medical record stating that a medical bottom bunk status was not indicated." *Id.* at 6. Jackson subsequently met with the new doctor, Dr. Gomez, and inquired about the change. *Id.* Dr. Gomez reportedly told Jackson that the "removal[] of such status had been done at the urging of Nurse Dameron, but that [Jackson] did require [a] bottom bunk and should not have been removed." *Id.* Jackson alleges, upon information and belief, that Nurse Dameron "removed [him] from [his] bottom bunk status of her own accord as retaliation for [this §] 1983 civil suit." *Id.*

On October 12, 2023, Nurse Dameron's husband, Lieutenant Lokey, ordered that Jackson undergo a urinalysis even though he had "no history of opioid usage and was not displaying any signs of usage." *Id.* Jackson alleges that the "only connection" that he had to suboxone was "Nurse Dameron's statement that [he] should use [suboxone] to treat pain." *Id.* at 6–7. Lokey accused Jackson of testing positive for suboxone and charged him with a disciplinary offense. *Id.* at 7.

3

Jackson was found guilty of the offense and penalized with a fine, a loss of visitation privileges for two years, and a loss of phone privileges for two years. *Id.* at 7.

Based on the foregoing allegations, Jackson claims that Dr. Smith and Nurse Dameron acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment and that Nurse Dameron retaliated against him for exercising his First Amendment right to file this lawsuit. Liberally construed, the supplemental complaint alleges that Dr. Smith violated the Eighth Amendment by (1) failing to reissue Jackson an ankle sleeve after he arrived at ACC; (2) refusing to issue a medical exemption that would have permitted Jackson to wear tennis shoes while working in the apparel shop at ACC; and (3) failing to order the physical therapy allegedly prescribed by a neurologist. The supplemental complaint alleges that Nurse Dameron violated the Eighth Amendment by (1) failing to respond to Jackson's requests for physical therapy; and (2) suggesting that he unlawfully purchase suboxone when he complained of being unable to purchase enough over-the-counter medication to address his ongoing pain, rather than assisting him in having his prior prescriptions renewed. The supplemental complaint also asserts claims of retaliation against Nurse Dameron arising from the removal of his bottom punk pass and the disciplinary charge issued by Nurse Dameron's husband. *See* Supp'l Compl. 7–8.

## II. STANDARD OF REVIEW

Defendants have filed a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) in which they argue that the supplemental complaint fails to state a claim against Nurse Dameron. Rule 12(b)(6) permits defendants to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." *Wilcox v. Brown*, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint *pro se*, the court must construe pleading requirements liberally." *Id.* Nevertheless, "[p]rinciples requiring generous construction of pro se complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed by a *pro se* plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III. DISCUSSION

**A.**      **Jackson's Supplemental Complaint**

Before turning to the partial motion to dismiss filed under Rule 12(b)(6), the court will first address the defendants' request that I dismiss or strike "each and every claim and fact set forth in the Supplemental Complaint that differs from what was alleged in the original Complaint." Defs.' Br. Supp. Mot. Dismiss 13, ECF No. 42. By Order entered February 7, 2024, I granted Jackson's unopposed motion for leave to file a supplemental complaint that clarifies his claims of deliberate indifference against the defendants and adds claims of retaliation against Nurse Dameron based on events that allegedly occurred after the date of the original complaint. *See* Order, ECF No. 38. I noted that the motion implicated Rules 15(a) and 15(d) of the Federal Rules of Civil Procedure.

5

*Id.* "Rule 15(a) embodies the federal courts' policy of liberal pleading amendment by ensuring that an inadvertent error in, or omission from, an original pleading will not preclude a party from securing relief on the merits of his claim." *Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). "Rule 15(d) operates in conjunction with Rule 15(a)" and "allows a court to grant a party the ability to 'serve a supplemental pleading setting out any transaction, occurrence or event that happened after the date of the pleading to be supplemented.'" *Id.* (quoting Fed. R. Civ. P. 15(d)). "Leave to supplement 'should be freely granted, and should be denied only where 'good reason exists . . . . , such as prejudice to the defendants.'" *Hodges v. Meletis*, 109 F.4th 252, 263 n.17 (4th Cir. 2024) (alteration in original) (quoting *Franks v. Ross*, 313 F.3d 184, 198 n. 15 (4th Cir. 2002)).

The supplemental pleading filed by Jackson serves two functions. It sets forth amended allegations and claims arising out of the events described in the original complaint, and it also presents new factual allegations and claims that arose after the original complaint was filed. Accordingly, under Rules 15(a) and 15(d), the pleading is "both an amended complaint and a supplemental complaint." *Garrett*, 989 F.3d at 82. To the extent that the defendants seek to have any new allegations or claims stricken for failure to comply with Rule 15(a) or 15(d), the request is denied.

**B.     Claims Against Nurse Dameron**

The defendants also argue that the supplemental complaint fails to state a viable claim of deliberate indifference or retaliation against Nurse Dameron. The court will address each claim in turn.

**1.     Deliberate Indifference**

"The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of cruel and unusual punishments.'" *Anderson v. Kingsley*,

877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016)). A constitutional violation occurs "[w]hen a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs." *Id.*

"A successful medical deliberate indifference claim has 'two components, objective and subjective.'" *Phoenix v. Amonette*, 95 F.4th 852, 859 (4th Cir. 2024) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)). "The objective component requires that the plaintiff's 'medical condition . . . be serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Jackson*, 775 F.3d at 178). To satisfy the subjective component, a plaintiff must show that a defendant "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d 178. "A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (internal quotation marks omitted).

In moving to dismiss any claim of deliberate indifference asserted against Nurse Dameron, the defendants argue that Jackson's allegations are insufficient to satisfy either component. With respect to the objective component, the defendants contend that "a reasonable inference can be made that [Jackson's] leg issues were not sufficiently serious to meet the constitutional definition," since Jackson alleges that a specialist "simply prescribed physical therapy and treatment for pain," rather than surgery. Defs.' Reply Br. 9, ECF No. 51. This argument is unpersuasive for two

reasons. First, when ruling on a motion to dismiss, the court must view the allegations "in the light most favorable to the plaintiff" and "draw all reasonable inference in the plaintiff's favor." *Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024). Second, as reflected above, a medical problem is serious enough to satisfy the objective component if has it been diagnosed by a physician as requiring "treatment." *Phoenix*, 95 F.4th at 859. Jackson's allegations regarding the leg issues for which he was prescribed treatment and the pain that he experienced after his medications were discontinued are sufficient to satisfy the objective component at this stage of the proceedings. *Id.*; *see also Melton v. Abston*, 841 F.3d 1207, 1222 (11th Cir. 2016) (noting that "[s]evere pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances").

The defendants also argue that the allegations against Nurse Dameron are insufficient to satisfy the subjective component of deliberate indifference. "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in original) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Additionally, "the treatment a prison facility [provides] must . . . be adequate to address the prisoner's serious medical need," and "government officials who ignore indications that a prisoner's or pretrial detainee's initial medical treatment was inadequate can be liable for deliberate indifference to medical needs." *Stevens v. Holler*, 68 F.4th 921, 933 (4th Cir. 2023) (alterations in original) (internal quotation marks omitted).

In the supplemental complaint, Jackson alleges that a specialist prescribed physical therapy for his leg issues; that he sent Nurse Dameron multiple requests to undergo physical therapy after

8

being seen by the specialist; and that despite being aware of the treatment prescribed by the specialist, Nurse Dameron never responded to his requests or arranged for him to undergo physical therapy. Jackson further alleges that he informed Nurse Dameron that he could not afford to purchase over-the-counter pain medication from the commissary and that she responded to his complaints by suggesting that he unlawfully obtain suboxone on the recreation yard. The allegations in the supplemental complaint, which must be accepted as true at this stage of the litigation, plausibly suggest that Nurse Dameron acted with deliberate indifference to Jackson's serious medical needs. *See, e.g.*, *Anderson v. Less*, 14-3167, 2014 U.S. App. LEXIS 25095, at *5 (6th Cir. Sept. 19, 2014) ("We find that a factual scenario in which prison officials force an inmate to purchase needed medication when those officials know the inmate cannot afford to do so is enough to survive dismissal for failure to state a claim."). Accordingly, the defendants' partial motion to dismiss is denied to the extent that the defendants argue that the supplemental complaint fails to state a claim of deliberate indifference against Nurse Dameron.

### 2. Retaliation

Jackson's supplemental complaint also claims that Nurse Dameron retaliated against him for engaging in activity protected by the First Amendment. Jackson alleges that Nurse Dameron had his bottom-bunk pass removed in October 2023 in retaliation for filing this action. Jackson also suggests that Nurse Dameron's husband charged him with a disciplinary offense because he filed this action and that Nurse Dameron was involved in the decision. I agree with the defendants that the supplemental complaint fails to state a plausible claim of retaliation against Nurse Dameron.

"To state a colorable First Amendment retaliation claim, a plaintiff must allege (1) that he engaged in protected First Amendment activity, (2) the defendant[] took some action that adversely

9

affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant['s] conduct." *Shaw v. Foreman*, 59 F.4th 121, 130 (4th Cir. 2023) (internal quotation marks omitted). Here, Jackson plainly engaged in protected activity by filing this lawsuit against Dr. Smith and Nurse Dameron. *See Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978) ("State prisoners have a constitutional right of meaningful access to the courts," and "the state may not punish a prisoner for having sought judicial remedies."). However, even assuming that Nurse Jackson was involved in the removal of the bottom-bunk pass or the disciplinary charge issued by her husband, Jackson has failed to allege a causal connection between his protected activity and the adverse actions described in the supplemental complaint.

First, the mere fact that Nurse Dameron (or her husband) knew about this action at the time of the events in question is insufficient to satisfy the causation prong of a retaliation claim. As the United States Court of Appeals for the Fourth Circuit recently emphasized, "knowledge of protected First Amendment activity alone 'does not establish a causal connection between the protected activity and the adverse action.'" *Hodges v. Meletis*, 109 F.4th 252, 262 (4th Cir. 2024) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 380 F.3d 209, 213 (4th Cir. 2005)). "Instead, a plaintiff must allege some additional evidence that can support an inference of causation." *Id.*

Second, while "temporal proximity alone can create the inference of causation," the Fourth Circuit "require[s] 'the temporal proximity [to be] very close.'" *Id.* (second alteration in original) (quoting *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017)). A lengthy lapse of time between a defendant learning of the protected activity and the defendant taking the allegedly retaliatory action "negates any inference that a causal connection exists between the two." *Id.* (internal quotation marks omitted). For instance, the Fourth Circuit has "expressly held

that adverse action taken three months after a grievance did not closely follow a protected activity, and thus does not present a circumstance that courts have characterized as creating a strong inference of retaliation." *Id.* (internal quotation marks omitted).

Here, the record reflects that a deputy marshal personally served Nurse Dameron with a summons and a copy of the original complaint on September 21, 2022. *See* Proof of Service, ECF No. 14 at 2. The adverse actions for which Jackson seeks to hold Nurse Dameron responsible— the removal of the bottom-bunk pass and the issuance of a disciplinary charge for using suboxone—occurred more than a year later, in October 2023. This length of time is too long to establish a causal connection by temporal proximity alone. *Hodges*, 109 F.4th at 263; *see also Pepper v. Precision Valve Corp.*, 526 F. App'x 335, 337 (4th Cir. 2013) (concluding that the plaintiff's protected activity "was the filing of his lawsuit" against his former employer, rather than "his continuing pursuit of the lawsuit," and that the plaintiff could not establish a causal connection between his protected activity and his termination since the termination occurred ten months after the lawsuit was filed). Thus, "without more," Jackson's supplemental pleading "fails to allege a First Amendment retaliation claim." *Hodges*, 109 F.4th at 263. Because the pleading does not contain any other allegations suggesting that Nurse Dameron took an adverse action against him because he filed this action, it fails to state a claim of retaliation in violation of the First Amendment. *Id.*; *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("The inmate must allege more than his personal belief that he is the victim of retaliation. Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim."). Accordingly, the partial motion to dismiss is granted with respect to the claims of retaliation asserted against Nurse Dameron.

11

## IV. CONCLUSION

For the reasons stated, the defendants' partial motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The retaliation claims asserted against Nurse Dameron in the supplemental complaint are **DISMISSED** for failure to state a claim upon which relief can be granted. An appropriate Order will be entered.

ENTERED: September 9, 2024

*C. Kailani Memmer*

C. Kailani Memmer
United States Magistrate Judge