IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

DANIEL NEIL JACKSON

    Plaintiff,

v.   Case No. 7:22-cv-00090

D. DAMERON, et al.

    Defendants,

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
NOV 01 2024
LAURA A. AUSTIN, CLERK
BY: M. POFF
DEPUTY CLERK

PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT AND OPPOSITION TO MOTION FOR ENLARGEMENT OF TIME

Come Now, Daniel Neil Jackson, Plaintiff, in opposition to the Defenses MOTION FOR ENLARGEMENT OF TIME for their recent Default regarding the Court's order on September 9, 2024. (Doc. 61)

FURTHERMORE, the Plaintiff outlines his response to the Defendant's MOTION FOR SUMMARY JUDGEMENT, should the Court rule in favor of the Defenses MOTION FOR SUMMARY JUDGEMENT, as well as all supporting evidence to support the Plaintiff's opposition to this motion.

I. OPPOSITION TO MOTION FOR ENLARGEMENT OF TIME

1) On September 9, 2024, the Court ordered the Defense to provide Plaintiff with a copy of the records received by way of subpoena. They were directed to do so within 15 days of the date of the order to allow the Plaintiff ample time to file a supplemental response

to the Motion for Summary Judgement filed by the Defendants.

2) The Plaintiff was given 45 days from the date of the order to provide this supplemental response. The Defenses delay limited the Plaintiff's time to prepare this response.

3) New procedures within the V.D.O.C. are noted well in advance of the policy becoming standard. Such changes should not have had any impact on the Defense's ability to file in a timely manner.

4) Even taking into account any new policy, which the Plaintiff is unaware of, fifteen days should have still provided the defense the time needed to carry out the court's order.

5) The fact that the Defense points out the Plaintiff's notice of relocation (Doc. 62), shows the Defense made no attempt to file until after the plaintiff had filed for relief.

6) FURTHERMORE, the Defense addresses the Plaintiff's request for relief (Doc. 63), which further provides evidence that the Defense made no attempt to provide the documentation until after the plaintiff had notified the court of their Default.

7) The Defense's motion and provision of the ordered documents ("Compliance") was entered 9 days beyond the deadline and was not received until 15 days after the deadline. Furthermore, it was done well after the Plaintiff filed the Default and prayer

for relief, and after the defense had received these documents.

8) This is now the 2nd time the Defense has shown delinquency in these proceedings. The previous order of Default was dismissed with just cause, but the defense is now showing a pattern of delay in this case.

9) The Plaintiff has been forced to drag through these proceedings due to the Defense's repeated delays and intentional "oversights". THEREFORE, the Plaintiff respectfully requests that an ENTRY OF DEFAULT Be ordered against the Defendant's.

II. PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

The Plaintiff disputes the following facts outlined by the Defense in their MOTION FOR SUMMARY JUDGEMENT and provides herein evidence in support of this opposition:

1-5) No dispute

6) Upon my arrival I had an ankle sleeve/brace that was prescribed to me by the provider at River North Correctional Center. No mention made of this.

7) I also requested the return of my ankle sleeve, which had been confiscated by property, pending reissue by medical.

8) Upon seeing Dr. Smith, I again requested the return of my ankle brace.

9) My request to have my right ankle brace was documented, but was never fully ~~addressed~~ addressed. Dr. Smith claims the request was noted, but he saw no reason to return it to me. Yet, review of the medical records does not show any indication that Dr. Smith ever addressed the request. He claims that he determined it unnecessary based on his review, yet does not include this determination, or his reasoning for not reissuing this ~~scribble~~ support brace. Even a lay person would see that the bone spur detected in my heel can cause tearing to the achilles. The previous provider at River North and the following providers (J. Shield, RN) both saw justification for the brace to be issued, while Dr. Smith simply chose to ignore the request.

10-13) No Dispute

14) No Dispute with the fact that the "Tennis Shoe Pass" was requested, but date should be noted. FURTHERMORE, ~~scribble~~ rather than immediately assessing the need, Dr. Smith put the request off, noting "Needs another MD assessment to determine pass." (FR-SDT-VDOC-000840)

15) No Dispute

16) Dr. Smith waited nearly a month after the initial request for a tennis shoe pass was made to see me, and nearly 22 days after my evaluation by Dr. Ward, to address the request. During that

time period I was forced to wear the work boots, which caused pain and numbness in my right leg to be intensified. This was the result of the lack of support and the hard soles in the state work boots. I was unable to stay on my feet for the extended hours. When Dr. Smith refused to provide the Tennis Shoe pass, I had no choice but to resign. He deliberately ignored my complaint of increased pain and numbness caused by the boots.

17) Dr. Smith stated to me "I have never heard of a Tennis Shoe pass, and even if I knew what it was, I wouldn't give you one." As with the ankle brace, he gave no justification for this refusal, simply dismissed the request. When I tried to explain how the soft soles helped alleviate some of the pain and numbness, he said he "didn't care" about my comfort at work and I could "suffer" with wearing the boots or quit.

18) The VCU Orthopedics prescription for arch supports and heel pads proved that my request for the "tennis shoe pass" was justified. The specialist did not show many any stretching exercises. He explained that he was ordering physical therapy exercises to be performed. I took this to mean I would receive physical therapy on a regular basis at Augusta.

19) No Dispute.

20) Dr. Smith did not go over any exercises, but

rather asked if the specialist had explained about the physical therapy exercises. I told him that, yes, he had told me about the need for therapy, but I was still under the impression that this was to be done with a physical therapist, and not on my own

21) Again, I had a different understanding of this prescribed treatment. (see above)

22) I submitted two requests in August of 2021. Neither request was answered and I was not scheduled for any sick call. On 8/19/21 I went to medical to receive my arch supports, at which time I asked V. Hallsey, RN about my physical therapy. She told me to write Nurse Dameron. I sent another request the first week of September, which again went unanswered.

23-24) No Dispute

25) This statement is perjurous, as medical records clearly indicate that I was not seen one time by Dr. Smith following the 7-27-21 follow-up. All subsequent requests were either outright ignored or dismissed without scheduling sick calls or visitations with Dr. Smith. I was not seen again until a new provider took over in 2023. (FR-SDT-VDOC-000131 & 000121, 000123, 000125)

26-30) No Dispute

31) The ankle brace had been suggested and prescribed by the previous provider at River North. This can easily be corroborated by medical records documenting time period of 2017 - 2021 (when transferred to Augusta) which has been conveniently left out of the documents requested and provided by the Defense. This further shows that Dr. Smith expressly disregarded another MD's prognosis.

32) (FR-SDT-VDOC-000145) states that the EMG was compatible with compressive neuropathy @ peroneal & tibial nerves. (FR-SDT-VDOC-000088) Noted weakness, tenderness along the Achilles tendon. X-ray revealed bone spur and calcification at insertion of Achilles tendon. (FR-SDT-VDOC-000091) EMG showed a compression of the nerves in popliteal fossa, MRI showed Baker cyst. While not using the word "deterioration", the diagnoses certainly show diminished health of the leg in general.

33) The only medication discontinued due to poor compliance was the Cymbalta. I made multiple requests to have medications renewed. These were either ignored, or responded to by saying "You can purchase OTC pain medications from commissary." These requests were all signed by Nurse Dameron. Furthermore, After several denials to renew prescriptions or schedule an appointment to address pain issues, I filed a Complaint,

followed by a Grievance, which I was later forced to Appeal. Nurse Dameron signed off on the written complaint.

34) While Ibuprofen can be purchased off commissary, it is the duty of the medical department to treat chronic pain issues and not ignore these complaints. Purchase of OTC medications is meant to be for occassional pain symptoms, not ongoing issues.

35) Again, I have never stated that Nurse Dameron 'prescribed' any medication. When I spoke to her regarding the fact that I needed my prescriptions renewed, and could not afford to regularly purchase OTCs from commissary, she made the snide remark about "just purchase suboxone off the yard like everyone else." My struggles with suboxone addiction did not become relevant until after this statement was made. Prior to this, I had never failed a drug test and did not regularly use any drugs. (My past struggles with any substance abuse had not been a present condition since 2010.) I did not consider her statement as just an off-hand comment though. As suboxone is used as a pain medication. She gave me justification for the use of an illegal substance.

This is not merely a matter of disagreeing with treatment plans or simple negligence. On multiple occassions Dr. Smith and Nurse Dameron ignored my complaints/requests, ignored treatments prescribed by other MD's, or outright denied treatment. For the above stated reasons, their Motion FOR SUMMARY JUDGEMENT should be dismissed.

I declare and swear under penalty of perjury that the foregoing is true and correct.

Further Declarant sayeth not.

Daniel N. Jackson

Daniel Jackson #1082918
GROC

Legal Mail
(Indigent)

Clerk, United States District Court
210 Franklin Road, SW, Suite 540
Roanoke, VA 24011-2208

RECEIVED
NOV 01 2024
USDC Clerk's Office
Mail Room